(Decided July 14th, 1866.)

---

## Jacob Gotwalt and Wife *vs.* George C. Neal.

DEED EXECUTED TO COMPOUND A THREATENED PROSECUTION FOR EMBEZZLEMENT: ILLEGAL CONTRACT,—ENFORCEMENT OF: DURESS: IN PARI DELICTO POTIOR EST CONDITIO POSSIDENDIS.——A bill was filed by a grantor to set aside his own deed, upon the allegation that its execution was procured by duress. It appeared in evidence that in the first instance inducements were offered to procure the execution of the deed, which the complainant contended amounted to duress or menace; but it also appeared that the deed, as at first executed, being found defective, 'the *day after* a similar deed, in which the defect had been cured, was exe-

cuted by the complainant, on which occasion no such inducements whatever were offered.—HELD:

1st. That whatever might have been the effect of the circumstances attending the execution of the first deed, in view of the evidence relating to the execution of the second, so far as the case rests upon the allegation of duress, the complainant was not entitled to relief.

2d. The law is well settled that contracts made in violation of law cannot be enforced; when, however, such contracts have been executed by payment of the money thereon, or the conveyance and delivery of property, the rule, which seems to be best established both by the weight of authority and reason, is to refuse to grant relief and leave the parties where they have placed themselves; in such case the maxim *"in pari delicto portior est conditio possidendis"* applies.

3d. The above rule and maxim are applicable to a case where a deed executed "for the purpose of compounding a threatened prosecution for embezzlement," is sought to be set aside by the grantor on the allegation that it was executed under duress.

APPEAL from the Superior Court of Baltimore city, in Equity:

The bill in this case was filed by the appellants in the Court below to have set aside two deeds alleged to have been executed by the appellant, Jacob, without consideration, and under duress of the appellee, and to have an account taken of certain personal property taken possession of by the appellee under the same instrument, and sold by him.

The bill states that the appellant, Jacob, who was a clerk and salesman in the dry-goods store of the appellee, was, about the 3rd or 4th of December, 1860, arrested at the instance of the appellee and led to the office of the appellee's attorney, and there, in a back room, falsely accused by the latter of embezzling the money of his employer, the appellee. A paper was then prepared by this attorney " assigning away the household furniture and a house in the town of York, Pennsylvania," to the appellee, and tendered to him for execution. He objected that this property had been purchased with his wife's money, and he had, therefore, no right

of disposition of it. But the alternative being set before him of going to jail upon this false charge or executing the paper, he, under the circumstances, and under duress, executed the paper and was then permitted to depart. The next day, while at his boarding house, a messenger from the appellee desired him to return to the attorney's office and execute another paper, the first being mistaken in date, and being still "under the same influences," he accompanied this messenger and did execute a second paper which he did not read, but which he understood to be only a more formal paper than the other. It was also alleged that the appellee said that no use should be made of these papers until after an account of his stock had been taken in the succeeding February, which promise had not been carried out.

The appellants afterwards filed their petition for an injunction to restrain the appellee from disposing of the real estate conveyed under these deeds; and with this petition they also filed as exhibits, a copy of the first deed executed by the appellant, Jacob, and a copy of the record of proceedings on a judgment of the Court of Common Pleas of York county, Penna., confessed by the appellant, Jacob, in favor of the appellee. Execution had been issued on this judgment, and personal property of the appellant, Jacob, to the amount of $579.52, sold thereunder. The second deed executed by the appellant, Jacob, was filed as an exhibit to the answer of the appellee. The warrant of attorney to confess the judgment above mentioned is alluded to in the petition, but not in the bill.

The answer of the appellee, which was required by the bill to be, and was, under oath, states the circumstances of poverty and distress under which the appellant, Jacob, first applied to the appellee for employment, and his engagement by the appellee at the compensation of three dollars per week, which, during the seven years of his employment had been increased to eight dollars per week. It then states the circumstances

that led to the discovery by the appellee that the appellant, Jacob, a trusted clerk, had been systematically and for a long time stealing large sums from him, and the detection of the thefts by the ordinary expedient of marked money. It denies an arrest in fact of the appellant, Jacob, who, freely and without menace, accompanied the appellee to the office of the latter's attorney, and there openly confessed that he had been for years stealing from the appellee; that his embezzlements amounted in the aggregate to between $5000 and $6000, with which he had purchased property in York, Pennsylvania; and it avers that the appellee, at the request of the appellant, Jacob, and in consideration of the latter reimbursing him as far as practicable for these abstractions, agreed not to prosecute the charge, and thereupon, the appellant, Jacob, freely, without any threats, and under no duress, executed the deed of the property in York in part reimbursement of the appellee; that this deed having been post-dated, the appellee sent for the appellant, Jacob, next day, to execute another deed, and that he came freely and executed the second deed, and likewise the confession of judgment before referred to, professing to be anxious to atone for the injuries done by him to the appellee, and to save himself from disgrace, as well as to be truly penitent; that no agreement was made that these papers should not be immediately availed of; that a great part of the personal property in the house in York had, however, been removed by the appellant, Jacob, by collusion with his tenants, and the real estate itself had been sold under a judgment recovered by a certain William Gilberthorp against the appellant, Jacob, in York, Penna., and the appellee had become the purchaser thereof at the sheriff's sale, and that the jurisdiction of the Superior Court of Baltimore was objected to in the premises.

Exhibit C, filed with the answer, is a copy of the proceedings on this judgment of Gilberthorp. From this judgment

an appeal had been taken, but was afterwards withdrawn. A list of judgments against Jacob Gotwalt, returned by the sheriff of York county, shows that the appellee's judgment had priority after Gilberthorp's, and he was accordingly treated by the sheriff as entitled *pro tanto* to his lien. The return of the sheriff was excepted to by a subsequent judgment creditor of Jacob Gotwalt, but it does not appear that these exceptions were sustained.

A commission was issued and testimony taken, much of which, in the view taken of the case by this Court, is unimportant.

It appeared in evidence that the appellant, Jacob Gotwalt, had been for seven years in the employ of the appellee, and had been considered worthy of trust and confidence; that the appellee having discovered considerable discrepancies between his accounts of stock and accounts of sales, and having been led by circumstances to suspect that Gotwalt had been systematically defrauding him, and appropriating to his own use, from day to day, a portion of the money received by him from his sales of goods, resorted to the ordinary expedient of sending a pretended purchaser to his store with marked money, who purchased goods to a certain amount, and paid for the same with the marked money; that Gotwalt, in a ticket making a return of said sale, returned $2.50 less than the amount then paid him, and that one hour thereafter a $2.50 gold piece was found upon his person, which was identified as one of the marked pieces paid him by said pretended purchaser; that Gotwalt having been induced by Lutz, a detective, to go to the office of R. S. Matthews, the attorney of the appellee, was met there by the appellee and one Fisher, his uncle, who remained in the front office of said Matthews, while Gotwalt was taken into the back room by Matthews and informed that he was suspected of defrauding his employer, and asked if he was willing to

submit to being searched; that having consented, he was searched, and the marked coin found upon his person by the said Matthews, who then informed him of the other evidences of his guilt in his possession; that Matthews further stated to him, that "Mr. Neal had no wish to prosecute him or to involve him in any trouble on account of these embezzlements, but that every consideration for his own sake, no less than for Mr. Neal's, ought to induce him to do justice to the latter," and that this was said in connection with a proposition that Gotwalt should indemnify Neal for his losses by executing the papers referred to in the bill of complaint.

It further appeared, that on the same occasion, after Gotwalt had returned from the back room, Neal stated to him that "he did not want to prosecute him, that he had no ill-will against him, that he only wanted to secure himself against loss, and if he could do that, and should afterwards discover, on taking account of sales, that his loss was not so great as he thought it was, that he would reimburse him whatever was due him;" that afterwards, on the same occasion, Gotwalt said, "that he did not want to be prosecuted," when Matthews again assured him that "Mr. Neal had no wish to prosecute him, that he felt nothing could be gained by it, that it would be taking up his time, and as he had no ill-feeling against him at all, such as would prompt him to prosecute him, all that he wanted was to get back his property, and that Neal was entitled to have it, and that he, Gotwalt, ought not to hesitate a moment about it.

It further appeared, that without further inducement, Gotwalt executed the papers referred to; that a day or two after, some informality having been discovered in said papers, and Gotwalt having been sent for, went to Matthews' office, and the informality being explained to him, and being asked if he was willing to execute others, said that he was, and did execute them; and that at the same time, Gotwalt executed

a confession of a judgment in Neal's favor to cover the fur-niture in the house at York.

The Court below, (MARTIN, J.,) decided that Mrs. Got-walt had no interest in the case, not being a party to the deed, and that whatever might be the circumstances under which the first deed was executed, the execution of the second deed was unconstrained and voluntary, and on that ground, by decree of Sept. 21st, 1863, dismissed the bill of complaint with costs. From that decree this appeal was taken. There was a motion by the appellee to dismiss the appeal.

The cause was argued before BOWIE, C. J., and BARTOL, and WEISEL, J.,—the case being heard at the same time on the motion to dismiss, and on the merits.

*W. M. Addison* and *W. Shephard Bryan*, for the appel-lants:

First. The confessions of the answer show that the first deed was executed under *duress;* and for the purpose of compounding a threatened prosecution for embezzlement. It is, therefore, void. *Wildey vs. Collier,* 7 *Md. Rep.,* 2731. *Story's Equity,* secs. 239, 294, 298, 300. *Osbaldiston vs. Simpson,* 13 *Simons,* 513. *St. John vs. St. John,* 11 *Vesey,* 535, 536. *Hatch vs. Hatch,* 9 *Vesey,* 298. 2 *Kent's Com.,* 466, 467. *Gardiner vs. Lewis,* 7 *Gill,* 377, 396.

Second. It is also evident, that when the other papers were executed a day or two afterwards, Jacob's mind was still controlled by the same influences, and that they were executed for the same purpose of escaping prosecution. They are, therefore, void also.

Third. These facts appearing by the answer, it is unneces-sary to consider the testimony, as that could not avail against the defendant's own admission.

Fourth. It is competent for the complainants to read these portions of the answer in proof without making the residue of it evidence. 3 *Greenleaf's Evidence, sec.* 281.

Fifth. The other portions of the answer cannot be read in evidence by the defendant. *Code, Art.* 16, *sec.* 103.

Sixth. But even if the other testimony could be considered, it would be found that Mr. Matthews' testimony harmonizes with the answer, and Fisher's testimony cannot establish any thing so improbable as that Jacob executed the papers voluntarily. Confessions of Jacob, obtained in the manner stated in the case, could not be adopted as a basis for the judgment of a Court of Justice.

Seventh. The record in the Gilderthorpe suit from York county cannot have the effect of establishing the validity of the deed. If the deed was obtained by *duress,* &c., &c., the title is bad and cannot be sustained by another title to the property subsequently acquired. The record was excepted to by the complainant in the Court below as evidence, and the exception was sustained by the Court, and no appeal taken from that decision.

Eighth. Neal was already clothed with the legal title by virtue of his deed, and purchased nothing at the sheriff's sale. It was his own property (in law) which was sold, and he was merely paying off the incumbrance of a judgment when he paid the money to the sheriff.

Ninth. The Court below ought to have cancelled the papers and directed a reconveyance of the real estate. It ought also to have directed an account of the property seized and sold under the judgment, and of the rents and profits of the real estate, and ought to have decreed payment to the complainants of the amount ascertained to be due.

Tenth. Mrs. Gotwalt was a proper party to the bill, as the real estate was hers in equity.

*Thos. S. Alexander* and *R. S. Matthews,* for the appellee:

On the motion to dismiss they referred to the Act of 1864, ch. 322. On the appeal they argued:

56        v. 25.

1. That the appellant, Mrs. Gotwalt, clearly has no interest in the proceedings. Her rights, whatever they may be, are entirely unaffected by the execution of the deeds by her husband, to which she was not a party.

2. The evidence taken in the cause shows, incontrovertibly, that the appellant, Jacob, had been guilty of embezzling large sums of money belonging to his employer. In fact, there is nothing in the whole record to the contrary, except his own unsworn averment, while his open confessions, made in the presence of the appellee, of Mr. Matthews, and of Mr. Fisher, as sworn to positively by each of them, prove conclusively, not only the fact, but the amount, of these thefts by him, and the disposition made by him of their proceeds in the purchase of the house and furniture in York. The evidence of Crome, that nine years previously to his examination, the appellant, Jacob, had $3,500, is nothing to the contrary. He does not state how he knows this money came through Mrs. Gotwalt, and that this house in York was bought with it. But the question is, whether the appellant, Jacob, was guilty of this embezzlement from his employer.

3. That where a servant has embezzled the property of his employer, a deed executed by him for restoring this property to the latter is founded upon a valid and valuable consideration in equity, however it may be at law. "He who seeks equity must do equity." The appellant, Jacob, could, therefore, only be relieved upon tendering to the appellee full reparation for the thefts committed by him. But this may be made plainer by another consideration. The evidence not only shows conclusively that the appellant, Jacob, committed these thefts, but, also, that the very property which he conveyed to the appellee was purchased by their produce, namely, the appellee's money. Under such circumstances equity would treat the appellant, Jacob, as a trustee for the appellee, and compel him to convey the property to the appellee. Admitting, therefore, duress, which is denied,

the appellee would have on his side not only the law, but the better equity of having a right to the property which his money had bought, while the appellant, Jacob, had only the inferior equity of having been compelled by the appellee to execute a conveyance, which a Court of Equity would have obliged him to execute on application of the appellee. If ever a party should be left to his remedy at law, it is this case, where a detected thief, who has made part restitution to the party whom he has robbed, asks to have that reparation annulled, upon the ground that he made it unwillingly; see 1 *Story Eq.*, *sec.* 298. He refers with approbation to the doctrine of the civil law upon this head, and cites from the Pandects, an instance precisely similar to this, where restitution cannot be demanded, as where the property is given by a thief *ne proderetur. Roy vs. Duke of Beaufort,* 2 *Atk.*, 193. *Hamilton vs. Cumming,* 1 *Johns. Ch. Ca.,* 52. *Roberts vs. Gibson,* 6 *H. & J.,* 127.

4. The appellee claims under the second deed; the first deed executed on the first day was admitted to be defective. Now duress is of two kinds, duress of imprisonment, and duress *per minas.* " The first, is where a man actually loses his liberty. The second, is either for fear of loss of life, or else for fear of mayhem, or loss of limb. And this fear must be upon sufficient reason." 1 *Bl. Com.,* 131. It is not pretended that the duress exercised over the appellant, Jacob, was of this second kind. Now, was the appellant, Jacob, under compulsion by actual loss of liberty when he sealed and delivered the second deed? Admitting that he was illegally imprisoned on the first day, the evidence of Crome and Fisher clearly demonstrates that his going back to Mr. Matthews' office to execute the second deed was as voluntary as his remaining there to do it was unconstrained by the appellee, or anybody present. The same considerations apply to the supposed extortion of the confession of judgment, which was done on the second day.

5. But the appellee has not only obtained the legal title to the property in question upon a fair and meritorious consideration, and without duress from the appellant, Jacob, and not only the better equity to retain it against him, but he has also the legal estate therein conveyed to him by the regular execution of a judgment of a Court of competent jurisdiction, all objection to which judgment was withdrawn by the appellant, Jacob. Assuming the exceptions to the sheriff's return, made by Small, Bender & Co., to be ascertained by a Court in York, the appellee would only be obliged to pay up the balance due of purchase money therefor, and out of his general estate primarily. If the property, on his failure to do so, were resold, and brought more than he had given for it, he, upon the ground, in any event, of his part performance of the terms of sale, would be entitled to the difference between his original bid and the sum actually realized, and not the appellant, Jacob. But if the appellant, Jacob, has any interest in these exceptions, he must litigate them in the Court at York. If he has none, he is bound by the sale to the appellee.

Bartol, J., delivered the opinion of this Court.

We concur with the judge of the Superior Court in the opinion that the allegation of duress, in procuring the deed and warrant of attorney in this case, is not supported by the proof.

Whatever may be said of the transactions at the office of Mr. Matthews, which took place on the 4th of December, 1860, when the first deed was executed, there is no evidence of any duress being used on the following day to induce the complainant to execute the deed of that date.

So far as appears from the evidence, the execution of that deed was a voluntary act on the part of Gotwalt, unconstrained by any duress, compulsion or menace, and so far as the

case rests upon that averment in the bill, we are of opinion relief was properly refused by the Court below.

It appears from the evidence, that Gotwalt, who was the clerk and salesman of Neal, was accused of having embezzled large sums of money of his employer, and without meaning to pronounce a judgment upon his guilt, ( which we are not now called on to do,) we are compelled to say, from the evidence in the record, the appellee had strong grounds to believe the charge to be true, and his object in demanding the deed was to obtain indemnity or reparation for his loss, which Gotwalt appears to have consented to give without other motive than a desire to make reparation for the wrong, combined with the hope of escaping a criminal prosecution.

It is impossible to doubt, from the evidence in the record, that this last was the chief consideration moving Gotwalt to the execution of the deed. The inducement being a promise by Neal not to prosecute, Neal, in his answer, says: "that he did consent to abstain from prosecuting the said Gotwalt for defrauding him and for the embezzlement of the money, in consideration of the said Gotwalt reimbursing him, as far as practicable, for the loss sustained at said Gotwalt's hands."

And Matthews says, in his testimony, "he ( Gotwalt ) said he did not want to be prosecuted, and I told him that I had already assured him that Mr. Neal had no wish to prosecute him, that he felt nothing could be gained by it," &c.

We think it very clear, from an examination of the whole case, that the first deed was executed "for the purpose of compounding a threatened prosecution for embezzlement;" and that the same purpose continued and induced the execution of the papers on the 5th of December. The appellants have contended that for this reason they are void, and ought to be cancelled, and the question is whether Gotwalt is entitled, on this ground, to have the relief prayed. This question will be considered without regard to the frame of the bill, no exceptions having been taken for want of sufficient

averments; and besides, if it should appear from the proof that the complainants are entitled to relief on this ground, the case might be remanded and the necessary amendments to the pleadings be allowed.

In considering this question we put Mrs. Gotwalt out of view, because not being a party to the deed, she has no interest in the controversy; her rights, whatever they may be, are unaffected by the deed, and we, therefore, exclude from our consideration, as inadmissible, all the evidence bearing on that part of the case.

The law is well settled that contracts made in violation of law cannot be enforced. See *Wildey vs. Collier & Wife*, 7 *Md. Rep.*, 273, and authorities cited in the opinion of the Court.

When, however, such contracts have been executed by the payment of the money thereon, or the conveyance and delivery of property, and application is made to a Court of Equity, by one of the parties to the contract, to grant him relief by ordering the money to be repaid or the property to be returned, the rule which seems to be best established, both by the weight of authority and reason, is to refuse to grant relief and to leave the parties where they have placed themselves. In such case the maxim applies, *in pari delicto potior est conditio possidendis.*

In *Collins vs. Blantern*, 2 *Wilson*, 341, cited by this Court in *Wildey vs. Collier*, a bond given for the compounding of a felony was avoided by plea setting forth the illegality of the consideration for which it was given; it was held that where money has, in fact, been paid upon such consideration, it cannot be recovered back again, because *in pari delicto*, &c. Ld. Ch. J. Wilmot said: "Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a Court to fetch it back again;—you shall not have a right of action when you come into a Court of Justice in this unclean manner to recover it back."

The same doctrine is supported by many authorities; these are cited by *Kent* in his *Commentaries, vol.* 2, 467, *notes,* and in *Story's Equity, vol.* 1, *sec.* 298, *notes.*

After a careful examination of the cases on this subject, we are satisfied that the great current of authority supports the doctrine laid down in *Collins vs. Blantern,* although it may not be possible to reconcile all the cases.

In *Neville vs. Wilkinson,* 1 *Bro. Ch. R.,* 547., Lord Chancellor THURLOW is reported to have said, "that in all cases where money was paid for an unlawful purpose, the party, though *particeps criminis,* might recover at law; and that the reason was, that if Courts of Justice mean to prevent the perpetration of crime, it must not be by allowing a man who has got possession to remain in possession, but by putting the parties back to the state in which they were before."

Mr. Justice STORY, referring to the words of THURLOW, Ld. Ch., says: "But this is pushing the doctrines to an extravagant extent, and effectually subverting the maxim *in pari delicto potior est conditio defendentis.* The ground of reasoning upon which his lordship proceeded is exceedingly questionable in itself, and the suppression of illegal contracts is far more likely, in general, to be accomplished by leaving the parties without remedy against each other, and by thus introducing a preventive check naturally connected with a want of confidence, and a sole reliance upon personal honor. And so accordingly the modern doctrine is established." 1 *Story's Eq. Jur., sec.* 298.

We think this criticism of Lord Thurlow's reasoning is very just, and we may add that the broad and unqualified terms used by the Lord Chancellor do not seem to have been demanded by the case before him, nor justified by the decisions to which he referred, especially not by the case of *Bromley vs. Smith,* 6 *Doug.,* 696, decided by Lord Mansfield.

Among the cases we have examined, bearing on this subject, is, *The Inhabitants of Worcester vs. Eaton,* 11 *Mass.*

368, decided in 1814. In many of its features, that case bears a striking analogy to this. It was an action at law to recover a parcel of land, the demandants claimed under a deed from Betsey Flagg. The defendants claimed under a prior deed from the same person, which was impeached on the ground that it had been executed upon the consideration, and for the purpose of preventing a criminal prosecution of the grantor. The fact was established and the transaction was declared to be in violation of law. But it was held that Betsey Flagg, being *particeps criminis,* could not maintain an action to vacate the deed, and the demandants claiming under her were alike precluded from recovery. In a very able and elaborate opinion delivered by PARKER, Chief Justice, the cases are examined and the law is thus stated.

"There have been some cases in England which look as if in all instances where a party has paid money upon an illegal transaction, he may recover it back again in an action for money had and received. But it is now unquestionably settled there, that an action for money so paid, cannot be maintained where the parties are really in *pari delicto;* and upon looking into all the cases upon the subject, some of which have already been referred to, it will appear that a distinction is maintained between those cases in which one of the parties has, by an illegal act, taken an advantage of, and oppressed the other, and those in which it is not possible to distinguish between the parties as to the degree of their criminality. Thus, where usury has been paid, it is considered that the lender has availed himself of the distress of the borrower and has violated the law to extort from him more than the lawful rate of interest. In this case, an action for money had and received will lie for the excess. In the cases of *Smith vs. Bromley,* 6 *Doug.,* 696, and *Browning vs. Morris,* 7 *Cowp.,* 790, the doctrine as laid down by Lord Mansfield, is, that where certain acts are made unlawful by statute, to

Gotwalt & Wife *vs.* Neal.

protect unwary and ignorant people from oppression and extortion, there, although both parties are guilty of violating the law, yet, they are not equally guilty, and that in such cases the party from whom the money is exacted shall recover it back from him who practices the oppression. Such are the cases of usury, of money paid to a creditor by a bankrupt to procure his signature to a certificate, and money paid contrary to the laws regulating lotteries. But that in all acts which are unlawful on account of their immorality or because they are hostile to public policy, there the parties to the act are in *pari delicto*, and *potior est conditio defendentis.*

"This distinction seems to have been ever afterwards observed in the English Courts, and being founded in sound principle, is worthy of adoption as a principle of Common Law in this country."

In the same case it was held that a party seeking to vacate a deed of lands on the ground that it was executed upon an unlawful consideration, stands in the same position as a party seeking to recover back money paid upon such consideration.

"A deed of bargain and sale signed, sealed, acknowledged, delivered and recorded, is an actual transfer of the land to the grantee as much as the delivery over of a sum of money, or of a personal chattel is a transfer of either of those."

Being of opinion in this case that the complainant, Jacob Gotwalt, is not entitled to relief upon any of the grounds suggested, we will sign a decree affirming the decree of the Superior Court, but without costs.

*Decree affirmed.*

(Decided July 13th 1866.)