No. 44,230

STATE OF KANSAS, *Appellant,* v. DEWEY L. GUNZELMAN, JR., *Appellee.*

(434 P. 2d 543)

Opinion filed December 9, 1967.

*Keith Sanborn,* county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, and *A. J. Focht,* deputy county attorney, were with him on the brief for the appellant.

*Richard B. Clausing,* of Wichita, argued the cause, and *E. Lael Alkire,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal comes as the aftermath of a criminal prosecution wherein the appellee, Dewey L. Gunzelman, Jr., entered a plea of guilty to the offense of attempting to bribe a district judge, contrary to K. S. A. 21-803. After Gunzelman was granted probation from the sentence subsequently imposed, he filed a motion requesting that the bribery money being held by an officer of the Wichita Police Department be returned to him as the owner. From an order of the district court sustaining the motion, the state has appealed.

The issue for determination is whether or not one who attempts to bribe another is entitled, after conviction, to the return of the money offered as a bribe.

The events giving rise to this abhorrent crime, and the proceedings with which we are immediately concerned, may be briefly summarized. A divorce action between Gunzelman and his wife was pending before the Honorable Howard C. Kline, judge of division two of the district court of Sedgwick county. Gunzelman paid one Sam Alfstad a sum in excess of $15,000 to be used by Alfstad in an attempt to bribe Judge Kline to award to Gunzelman the custody of the minor children of the marriage. Alfstad secretly placed $5,000 cash in Judge Kline's desk, then telephoned the judge and told him about the money and that there was twice that much more available. Judge Kline refused to have anything to do with the nefarious transaction and immediately called in the county at-

torney, Gunzelman and his attorney, Mr. E. Lael Alkire. Either Mr. Alkire or the county attorney removed the $5,000 from Judge Kline's desk and turned the money over to the custody of Lt. Hugh H. Herring of the Wichita Police Department to be held as evidence.

Alfstad, being a fugitive from justice, was charged directly by information in the district court (Case No. CR 1000-64), and on November 16, 1964, appeared and entered a plea of guilty to attempted bribery. On the same date, and prior to the plea, one of Alfstad's attorneys handed Lt. Herring a $10,000 bank money order payable to and endorsed in blank by Alfstad. Thereupon, the money order was retained by Lt. Herring. A few days later Alfstad was sentenced to the penitentiary and denied probation.

After a preliminary hearing, Gunzelman was bound over to district court for trial, an information was filed (Case No. CR 1015-64), and on December 1, 1964, he appeared, entered a plea of guilty, was sentenced, and was granted probation. On January 16, 1965, Gunzelman filed a motion in Case No. CR 1015-64 requesting return of the $5,000 cash and the $10,000 money order held by Lt. Herring. The district court's order sustaining the motion forms the basis of this appeal. The state's request to stay the order was denied by the district court, and it is agreed the property has been returned to Gunzelman.

Preliminarily, it is noted that the events of the instant case arose at a time when there was no statute in existence pertaining to the disposition of this type of property being held as evidence. K. S. A. 1965 Supp., 62-1834, which is a comprehensive statute relating to custody, use and disposition of seized property, had not yet been enacted.

While the matter of disposing of property taken or detained as evidence in a criminal case is governed by statute in most states, there is authority that even where there is no statute, the court before which the action was brought, or is pending, has inherent power to direct that such property be returned to the owner, delivered up to his order, or otherwise disposed of when it is no longer required for the purposes of justice. (*Bruchal v. Smith,* 109 Conn. 316, 146 Atl. 491; *Thatcher v. Weeks,* 79 Me. 547, 11 Atl. 599; *United States v. Parker,* [C. C. S. D. N. Y. 1908] 166 Fed. 137.) It has been held that property or money lawfully in the hands of law enforcement officials for use as evidence in a criminal proceeding is regarded as being in *custodia legis* (*Holker v. Hennessey,*

141 Mo. 527, 42 S. W. 1090, 39 L. R. A. 165, 64 Am. St. Rep. 524, and *Kuehn v. Faulkner*, 136 Wash. 676, 241 Pac. 290, 45 A. L. R. 571) and subject to the court's order as to disposition thereof in the same proceeding, rather than in a separate action (*State v. Jacobs*, 137 Ohio St. 363, 30 N. E. 2d 432; 6 C. J. S., Arrest § 18b).

We believe under the circumstances here the district court had inherent power to make an appropriate order disposing of all the property in the hands of Lt. Herring. The fact that the $10,000 money order, of which Gunzelman sought return, was surrendered to Lt. Herring by Alfstad's attorney as an incident to the prosecution of Alfstad's case, rather than Gunzelman's, gives us no pause. After the money order came into Lt. Herring's possession, and Alfstad pleaded guilty, the officer held it, as well as the $5,000 cash, for potential use as evidence in the prosecution pending against Gunzelman. The legality of Herring's possession of the property for that purpose is not questioned. The property was in *custodia legis* and subject to the direction and control of the court in Gunzelman's case. Upon Gunzelman's pleading guilty, further retention of the property as evidence was unnecessary, and the court had the authority to make an order of disposition.

Proceeding to the propriety of the district court's ruling, we find the state vigorously contending that the order is clearly erroneous because, under the facts, Gunzelman forfeited his right to recover the "tainted money" used in his attempt to bribe the district judge. Gunzelman, on the other hand, asserts that he is the rightful owner of the property, and particularly since the bribe was not accepted by the judge, is entitled to its return.

Although we have been cited to no cases where an attempted briber, after conviction, has successfully enlisted the aid of a court in recovering money paid as a bribe, the attitude of this court toward bribers generally is clearly reflected in the early case of *State, ex rel., v. Cross*, 38 Kan. 696, 17 Pac. 190. That was an action by the state to cancel a contract for the sale of certain land purchased by the defendant from an authorized agent of the board of regents. As part of its cause of action, the state alleged the contract was induced by defendant's fraud and bribery. Defendant, in his answer, among other things alleged he had made partial payments in cash which had been accepted by the state, and that the state had not returned or offered to repay said money to him. In commenting on defendant's assertion that the consideration must

be returned or tendered by the state before the contract could be annulled, the court said:

"We think, therefore, upon principle and authority, that if the contract . . . was induced and obtained by bribery of the officials having control thereof, the courts must leave the briber where he stands, and deny him any benefit from his contract. Therefore, if the allegations of the petition be fully established and bribery proved as therein charged, the state will not be required to return or tender the money paid by Cross, in order to have the contract canceled and wiped out. A party ought not to be permitted to induce public officers to act corruptly, and then, when the corruption is uncovered, be allowed to retire from the transaction, with his money returned to him, as if he had acted honestly and in good faith. Such conduct, if tolerated, would sap the condition on which official honesty rests, and legalize temptations which would lead from duty many an official who without such inducements might perform his duty." (pp. 701-702.)

There has developed the rule, which is supported by the great weight of authority, that in the absence of a statute, one who bribes another cannot recover the money or property transferred as part of the bribe. (See Anno. 60 A. L. R. 2d 1273, and cases collected therein; 17 Am. Jur. 2d, Contracts § 221; 11 C. J. S., Bribery § 20.) Illustrative of the briber's plight is the case of *Womack v. Maner*, 227 Ark. 789, 301 S. W. 2d 438, 60 A. L. R. 2d 1271, in which recovery of money paid as a bribe was sought in an action by the briber. The complaint alleged the payment of the money to the defendant, a judge, to prevent the plaintiff from being prosecuted or punished for engaging in the unlawful business of gambling. A demurrer to the complaint was sustained. The supreme court, in affirming the lower court's ruling, held that in the absence of a statute authorizing recovery of money paid as a bribe, the law will aid neither party to the alleged illegal and void contract, because the parties were *in pari delicto*, and the courts will not permit recovery of money voluntarily surrendered under such circumstances.

Two early cases which are more apropos to the facts here deserve attention. In what is regarded as a landmark decision, the U. S. Supreme Court held in *Clark v. United States*, 102 U. S. 322, 26 L. Ed. 181, that money paid to a public officer could not be recovered by the bribers even though the money was no longer in the hands of the original recipient. The court reasoned as follows:

". . . Clearly this was bribery, and placed the claimants and the man they corrupted *in pari delicto*. They could not recover back from him the money they paid, neither can they from the United States after it has been taken from him as a punishment for his faithlessness to his trust." (pp. 331-332.)

Similarly, recovery was denied in *Commonwealth v. Waxman and Dimitroff*, 5 Pa. D. & C. 157, 27 Dauph. Co. 162. There, the defendant, Waxman, paid money to Shaver, a prosecutor, in order to influence his action in another prosecution then pending. Waxman was thereupon convicted of the crime of bribery. The prosecutor petitioned the court for instructions concerning the disposition of the monies in his hands. In rejecting Waxman's contention that since forfeiture was not provided by statute as a penalty for bribery, the money should be returned to him, the court said:

"The money in question is now in possession of the petitioner, Rodney W. Shaver. It was paid to him by Waxman as a bribe to secure the release of the Furls. It was not used by Shaver to accomplish the purpose for which it was paid to him by Waxman. The purpose sought to be accomplished by Waxman in thus paying said sum of money to Shaver was clearly illegal; it was, in fact, criminal in its intent. Therefore, if a civil suit were brought by the defendant, Waxman, against Rodney W. Shaver to recover from him the money paid to him as a bribe by the said H. Waxman, no recovery could be had because of his, Shaver's, failure to perform his part of the contract. . . ." (pp. 158-159.)

The court concluded that Waxman likewise could not control the disposition of the money, and ordered it turned over to the county treasurer.

The public expects, and is entitled to, fair and impartial administration of justice by the courts of the land. The act of a person who attempts to bribe a member of the judiciary in an obvious effort to gain favor and influence a decision of the court strikes at the very heart of our judicial system. We are not impressed with Gunzelman's argument that he is entitled to the return of the bribery money since it was not accepted by Judge Kline; nor does the fact the $10,000 did not actually reach Judge Kline enhance Gunzelman's standing in the eyes of the law. The agreement between Gunzelman and Alfstad was void as against public policy, and under the authorities, Gunzelman could not have recovered the money from Alfstad. He voluntarily parted with possession and control of the money in furtherance of his diabolical plan agreed to by Alfstad. For us to say that Gunzelman was entitled to the return of the money with which he sought to accomplish his evil scheme would be to encourage others bent on like wrongdoing to proceed upon the assumption that if the bribe is not accepted, no pecuniary risk is involved. The courts will not permit one to play so fast and free.

We, therefore, hold that the district court's order directing the

property be returned to Gunzelman was erroneous. Although the $15,000 is now in Gunzelman's hands, the state is not without remedy to pursue the matter further in the lower court in this proceeding, or by separate action.

The judgment is reversed.