## JOSEPH P. CERTA ᴇᴛ ᴀʟ. *v.* ROBERT A. WITTMAN

[No. 719, September Term, 1976.]

*Decided March 16, 1977.*

The cause was argued before Mᴇɴᴄʜɪɴᴇ, Lᴏᴡᴇ and Mᴀsᴏɴ, JJ.

*Nancy E. Paige,* with whom were *Allan J. Malester* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellants.

*Sheldon E. Friedman* for appellee.

Lᴏᴡᴇ, J., delivered the opinion of the Court.

It would serve little purpose to recite all of the parties' conduct in negotiating the purchase and sale of certain real estate, part of the cost of which forms the subject of this suit. It will suffice to say that appellee, who was not licensed to sell real estate, obtained an option to purchase certain real estate and a "Contract of Sale" for that property (for a

$340,000 purchase price) and sold the latter [1] to appellants for $50,000 less one-half of the transfer tax. Appellants, the ultimate purchasers, contend on appeal that appellee's conduct, as evidenced by the preliminary negotiations and other circumstances surrounding the transaction, brought him within the definition of a real estate broker or salesman set forth in Md. Code, Art. 56, § 212 (a) and (b), and explicated by subsection (e). If that is so, argue appellants, appellee is proscribed from collecting through judicial process the $31,500 unpaid balance of the option's purchase price by Md. Code, Art. 56, § 228, which states:

> "No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this subtitle to other than licensed real estate brokers and real estate salesmen unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service."

Because the case was tried without a jury (in the Circuit Court for Baltimore County), we are bound by the clearly erroneous standard of Md. Rule 1086 when reviewing the evidence, but simple error in the application of the law will compel reversal. *A. S. Abell Co. v. Skeen,* 265 Md. 53, 55; *Schwartzbeck v. Loving Chevrolet,* 27 Md. App. 139, 145.

We accept the trial judge's findings on the evidence and give due regard to his opportunity to judge the credibility of

---

1. The trial court found that appellee had assigned appellants a valid option. The record shows, however, that it was actually the "Contract o Sale" which was assigned. The discrepancy affects neither our reasonin nor our result.

the witnesses. Setting the stage for argument by counsel, he expressed some of his conclusions:

> "I have certain determinations that can be easily made. Number one, I am going to not listen to any argument at all in reference to any form of an agreement of an option prior to April 18th or 19th, whatever that date was. I am finding as a matter of fact — and I do not believe the Plaintiff in this case whatsoever or the witnesses that testified. *All of the evidence in this case indicates to me exactly what happened, Mr. John Serio drew up something in April, which was submitted to the Plaintiff in this case, and which he has been using,* which was never signed until April 18th, and there was never a prior agreement ten days or two weeks ahead of time, I am finding that as a matter of fact, and I don't want any argument over it; everything in this case indicates it." (emphasis added).

The intensity with which he expounded his views upon the credibility of witnesses in his opinion left little room for doubt as to his views:

> "I have heard all of the testimony, I have heard final argument of counsel, and I find in front of me two fast and loose operators of big money, that in my opinion will take advantage of anybody or any place they can to come out on top, and in this particular case that is in front of me.
>
> . . . .
>
> I am very, very upset, as you can tell, at the type of testimony given by Mr. Wittman. And if I should decide my cases on the basis of who is candid in this case, I would enter a verdict in favor of Mr. Certa, because I think he was a very honest individual as far as this case is concerned and what he had to say about it; and I do not think that Mr. Wittman was. However, he is the sharper of the two operators as far as this case is concerned; he outsmarted the

other one, and he comes out with the loot in the long run.

For the reasons I have just stated, I have to find a judgment, as much as I don't like to do it, I have to find a judgment in favor of Mr. Wittman in the amount of $31,500. I will not allow any back interest; the interest will be from the date of the judgment. This is the court's determination. Costs to be paid by the Defendant in the case."

Although we adhere to the trial judge's findings of fact from his personal observations of the witnesses, it is apparent that he applied these evidentiary conclusions to an overly rigid interpretation of the law. The court clearly labored under the misapprehension that the existence of a valid option [2] obviates the strictures of § 228 as a matter of law, notwithstanding a preexisting expectation or intention of obtaining the option, for sale to another, for a fee:

"We all recognize if there is a loophole in the real estate law, there is a loophole, because an individual like Mr. Wittman, who has no right to practice real estate, doesn't go about what is necessary to do, can go out and pick up an option, and turn around, and make money off of it, which is nothing but a camouflage around the real estate law, but that exists, and it is not illegal to do it; it should be illegal, but it isn't. In fact, I intend to write a letter to the Real Estate Board, and explain everything I can about this case and what has been going on. I think both of these parties realized at the time what kind of shenanigans they were involved in. However, Mr. Wittman can walk out of here right now, see a sign on a piece of property across the street from the court house, and if he is glib enough, can walk in, and for fifty or five hundred dollars get an option on it, *with the full*

2. We have read all of the authority cited by appellee which, while informative on options, is inapposite to the questions in this case.

*intention he is going to turn around and sell that option, resell it to someone else, and the laws says he is able to do it;* and I think it's a crime the law should be that way.

All of the cases that counsel for the Defendants has explained to me are not cases where there was an actual option. Counsel keeps trying to get me to declare there was no option in this case. Unfortunately for his client, Mr. Certa, there was an option, and that option was a valid option." (emphasis added).

Without questioning the factual conclusion of the existence of a valid option, we do not agree with the trial court's interpretation that its existence alone permits a circumvention of the prohibition of Md. Code, Art. 56, § 217, which proscribes unlicensed entities from acting as real estate brokers.

The definition of a real estate broker includes any person who is regularly engaged in the business of dealing and trading in real estate "or leases and options thereon". Md. Code, Art. 56, § 212 (a).[3] Subsection (e)[4] of § 212 provides

3. § 212

"(a) *'Real estate broker' defined.* — 'Real estate broker' shall mean *any person,* association, copartnership or corporation foreign or domestic, who for another and for a fee, commission or any other valuable consideration sells, purchases, exchanges, leases, rents, or collects rent for the use of real estate or who attempts or who offers by verbal solicitation, advertisement or otherwise to perform any such function, or who aids, attempts or offers to aid, for a fee, any person in locating or obtaining for purchase or lease any residential real estate, or *who is regularly engaged in the business of dealing and trading in real estate or leases and options thereon,* or who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both, or *who is engaged in the business of* subdividing and selling land in building lots or sites, whether such real estate is located in this or any other state or the District of Columbia." (emphasis added).

4. § 212

"(e) *Acts constituting person real estate broker or salesman.* — *Any person,* partnership, association, or corporation, *who, for*

that any person, who, for another, engages in a *single transaction* described in the definition of a broker, with the intention or expectation of collecting a fee, shall be deemed a real estate broker or salesman within the meaning of the subtitle "REAL ESTATE BROKERS".

The evidence supported the factual conclusions that after considerable negotiations through realtors to find a desiring party (Certa) relative to a desirable property, Wittman purchased an option for $500 from the owner of the property (Worthington Valley Estates, Incorporated) which option he thought he had patterned to Certa's satisfaction.[5] Finding he had not done so, he renegotiated the terms of the ultimate purchase with Certa. The negotiations culminated in an agreement which recited that Wittman's option was not satisfactory to Certa and that Wittman pledged his "best efforts to cause Worthington Valley Estates, Incorporated to execute a substitute agreement, hereinafter referred to as the 'Contract of Sale' ". The purchase price of the contract of sale was to be $50,000 less one-half of the transfer tax. Certa agreed to provide the contract deposit which was to become the liquidated damages if settlement was not made as contracted, leaving appellee with nothing at stake but the $500 cost of the option.

This is precisely the type of conduct that the statute proscribes by one who is neither a licensed broker or

---

another, *in consideration of compensation, by fee, commission, salary, or otherwise,* or *with the intention or in the expectation or upon the promise of receiving or collecting a fee,* does, offers or attempts or agrees to do, *engages in* or offers or attempts or agrees to engage in, either directly or indirectly, *any single act or transaction contained in the definitions of a real estate broker* or real estate salesman in subsections (a) and (b) of this section, whether said act be an incidental part of a transaction, or the entire transaction, *shall constitute such person,* partnership, association, or corporation *a real estate broker* or real estate salesman *within the meaning of this subtitle.*" (emphasis added).

5. In addition to the negotiations for the option in anticipation of resale, the evidence clearly showed, and the judge observed, to appellee that:

"you've got judgments running up and down your arms, don't you? . . . You owe everybody in town, don't you, Mr. Wittman?",

further indicating that the option was obtained with the sole intent and expectation of resale for a profit.

salesman nor fits one of the eight excepted categories which permit sales by persons other than licensed brokers or salesmen. Md. Code, Art. 56, § 212 (f).[6] The evidence does not indicate that appellee fits in any of these categories.

Paraphrasing a case strikingly apposite, although not controlling, *Smirlock v. Potomac,* 235 Md. 195, 203, it follows, we think, that § 228 is, as it purports to be, a bar to appellee's action for compensation. This does not mean that Certa was so innocent as to command our aid. To the contrary, the record reflects, and the judge observed, that both parties were "fast" if not "loose" operators who were aware of "what kind of shenanigans they were involved in." Wittman, not Certa, asked the courts to aid him in his questionable endeavors. The law will not aid a man who founds his cause of action upon his own illegal acts. The courts should leave such parties where they found them. See *Zalis v. Blumenthal,* 254 Md. 265, 267.

---

6. § 212.

"(f) *Exceptions.* — The terms 'real estate broker' and 'real estate salesman' shall not include:

(1) Receivers, trustees, administrators, executors, guardians or other persons appointed by or acting under the judgment or order of any court; nor

. (2) Public officers while performing their official duties as such; nor

(3) Any bank, trust company or mortgage loan institution organized under the laws of this State or the United States with respect to the management or sale of any property acquired through or in connection with mortgage foreclosures; nor

(4) Owners or lessors of property in the management and sale of such property unless their principal and regular business is that of purchasing, selling, exchanging or trading in real estate and options and leases thereon; nor

(5) Investment home builders with respect to the sale or rental of houses constructed by them; nor

(6) Attorneys at law who are not regularly engaged in the real estate business and who do not hold themselves out by sign, advertisement or otherwise as offering to the general public the services authorized by this subtitle to be performed by real estate brokers; nor

(7) Any person holding in good faith a duly executed power of attorney from the actual owner authorizing the sale and conveyance or leasing of any real estate, where only one such transaction is involved; nor

(8) Any duly licensed auctioneer with respect to the sale of real estate at public auction."

The Court of Appeals in *Thorpe v. Carte*, 252 Md. 523, 529, quoting 2 Restatement *Contracts* § 598, Comment a, expressed the reason for its reluctance to award recoveries to those who try to circumvent the law, even absent § 228:

> " '[T]he rule of public policy that forbids an action for damages for breach of such an agreement is not based on the impropriety of compelling the defendant to pay the damages. That in itself would generally be a desirable thing. *When relief is denied it is because the plaintiff is a wrongdoer, and to such a person the law denies relief. Courts do not wish to aid a man who founds his cause of action upon his own immoral or illegal act.* If from the plaintiff's own statement or otherwise it appears that the bargain forming the basis of the action is opposed to public policy or transgresses statutory prohibitions, the courts ordinarily give him no assistance. The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff.' " (emphasis added).

Straight shooters should always win, but when there are none, bad guys need not look to us for help.

*Judgment reversed.*
*Costs to be paid by appellee.*