## STATE OF MARYLAND *v.* JAMES LINWOOD STRICKLAND

[No. 971, September Term, 1978.]

*Decided April 19, 1979.*

The cause was argued before GILBERT, C. J., and THOMPSON and WILNER, JJ.

*Michael A. Anselmi, Assistant Attorney General,* with

whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Stephen C. Orenstein, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Reginald W. Bours, III,* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The appellee, James Linwood Strickland, for whatever else he may lack, suffers not for want of *chutzpah.*[1] Strickland set out to bribe Judge Sylvania W. Woods, a District Court Judge in Prince George's County. The purpose of the bribe was to have Judge Woods show leniency toward a friend of Strickland who had a case pending before the judge. Contact with the State's Attorney was promptly made by Judge Woods. Apparently, the judge was asked to play along with Strickland until the actual payment of money occurred. Strickland turned twenty-five hundred dollars ($2500) over to the judge who immediately gave it to agents of the State's Attorney. Strickland was indicted for bribery, pled guilty and was sentenced to imprisonment for a term of four (4) years. At the time of the acceptance of the guilty plea on November 17, 1977, the State offered the money as an exhibit.[2] It was received into evidence by the Court. Strickland did not appeal the judgment of the Circuit Court for Prince George's County which was entered on March 1, 1978.

Almost three months after the criminal trial, Strickland filed a *"MOTION FOR MODIFICATION OR REDUCTION OF SENTENCE, RETURN OF PROPERTY, AND OTHER APPROPRIATE RELIEF."* A hearing was held in the circuit court, and the judge, on August 10, 1978, ordered that the twenty-five hundred dollars ($2500) be returned to Strickland.

---

1. *Chutzpah* is of Yiddish origin. It means that a person has "gall, moxie, nerve and audacity compounded with brazen assertiveness." Morris, *Dictionary of Word and Phrase Origins.* (1977) pg. 132. According to William and Mary Morris, "a lad with real *chutzpah* is one who would kill both his parents and then demand leniency of the court on the ground that he is an orphan." *Ibid.*

2. Had the State not placed the money in evidence, something it did not need to do, it is doubtful that this appeal would be here.

It is the return of the property portion of the motion that the State promptly appealed.

Strickland has moved to dismiss the State's appeal on the ground that the return of the money was ordered as part of the criminal trial, and the State may not appeal in a criminal case except in certain circumstances which are inapplicable here. *State v. Stanley,* 34 Md. App. 393, 367 A. 2d 27 (1977). *See also* Maryland Courts and Judicial Proceedings Code Annotated § 12-302c.[3] Obviously, we must first determine whether the matter before us is a criminal case. If it is, we shall not reach the merits because the appeal must be dismissed. Courts art. § 12-302c; *State v. Stanley, supra.*

There is no dispute that the motion for the *"RETURN OF PROPERTY"* was filed in the criminal case, after the case had been tried and the time for appeal had expired. The trial court did, however, possess the power to modify by way of reduction its original sentence, but that authority would have ceased on May 30, 1978, Md. Rule 774 b, one day after the motion was filed. A motion to modify or reduce a sentence is directed to the sound discretion of the trial court and is not appealable.

It does not follow, however, that simply because a motion is filed in a court that exercises criminal jurisdiction, that the proceeding arising from the motion must, *ipso facto,* be criminal in nature, *e.g.,* civil contempt. The motion for the return of the money was, in our view, more akin to a replevin, a civil action, rather than a criminal proceeding. The Court of Appeals, in *Novak v. State,* 195 Md. 56, 72 A. 2d 723 (1950), considered a case wherein there was a petition filed in a criminal cause, following conviction for violation of the gambling laws, to recover monies seized as a result of the execution of a search and seizure warrant. The Court said

---

3. That section provides:

"(c) In a criminal case, the State may appeal:

(1) From a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition; and

(2) From a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code.

that it considered the petition to be filed appropriately in the criminal case as "an equivalent of an action of replevin (if the money was still held in specie) or of trespass or trover for the determination of title (so far as necessary) or right of possession to the money." *Id.* at 64, 72 A. 2d at 726. Hence, it is manifest that the Court recognized in *Novak* that irrespective of whether the petition was filed in a criminal case, it was, nevertheless, "equivalent of an action of replevin." That, however, was before the enactment of Courts art. § 4-401, which vested "exclusive original civil jurisdiction in: ... (2) An action of replevin, regardless of the value of the thing in controversy," in the District Court. That jurisdiction may not be ousted except in the most narrow of circumstances. Courts art. § 4-402 (e) (2). Consequently, if the *Novak* dicta now has any meaning, it must be that the petition for the return of the money should have been brought as a replevin in the District Court, or that because it was filed in the circuit court, where the money was, it is in the nature of "trespass or trover for the determination of title." *Novak v. State,* 195 Md. at 64, 72 A. 2d at 726.

We think Strickland's petition, even though filed in the criminal case, was a request that the court determine title to personal property. As such, regardless of what Strickland chooses to call it, that aspect of the case is civil, not criminal, and it matters not one whit that the money was introduced as evidence in a trial for violation of a criminal statute.

We hold that the proceeding in the circuit court to recover money that was introduced into evidence, in a bribery trial, was civil in nature, and that the State has the right to appeal an order of court directing that the money be paid over to the briber. The appellee's motion to dismiss is denied.

Having determined that the appeal is properly before us, we shall now undertake to decide whether the trial court was correct in ordering the refund of the bribe to the briber. Md. Rule 1217 f 2, Strickland says, entitled him to the return of the money. The rule provides:

> "All exhibits introduced into evidence or marked for identification during the trial of a case, and not filed as a part of or with the pleadings, shall be

retained by the clerk of court or such other person as may be designated by the court. After either (i) the time for appeal has expired, or (ii) in the event of an appeal, the mandate has been received by the clerk, the clerk shall send written notice to all counsel of record advising them that if no request to withdraw such exhibits is received within ten (10) days from the date of the notice, the exhibits will be disposed of. Unless such a request is received by the clerk within ten (10) days from the date of notice, or unless the court within such period shall order otherwise, the clerk shall dispose of the exhibits in such manner, including destruction, as may be appropriate."

Strickland argues that "[t]he record herein fails to demonstrate any compliance by the Clerk of this mandate, nor any request by Appellant [the State] to withdraw the exhibits in the procedure required." Therefore, Strickland moved that the twenty-five hundred dollars ($2500) be turned over to him. We do not read Rule 1217 f 2 in the same manner as Strickland. We think the rule means that the clerk of the court is required to notify all counsel in the case that the evidence will be disposed of in such manner as may be appropriate unless the party who put the exhibit into evidence moves for its return within ten (10) days after the notice to counsel.

The rule is clearly framed in terms of requests to "withdraw" exhibits. The word "withdraw" means, *inter alia,* to "take back." *Webster's Third New International Dictionary of the English Language Unabridged* (1976 ed.); *The American Heritage Dictionary of the English Language* (1970 ed.). Since only one who gives something may take it back, the plain meaning of Rule 1217 is that only the party that placed an exhibit in evidence may make a request to withdraw it. As Mr. Justice Holmes said in *United States v. Brown,* 206 U. S. 240, 244, 27 S. Ct. 620, 621, 51 L. Ed. 1046, 1047 (1907), "[W]hatever the consequences, we must accept the plain meaning of plain words." A consequence of the plain meaning of the word "withdraw" is that we do not believe that the rule permits a party to a case to recover the exhibit

unless that party is the one who placed it in evidence, absent a showing of ownership.

From the record it is apparent that the hearing judge believed that to permit the State to retain the twenty-five hundred dollars ($2500) that was used in the bribe constituted a violation of the Maryland Declaration of Rights, Article 27. That Article provides "[t]hat no conviction shall work corruption of blood or forfeiture of estate." The hearing judge reasoned that for the State to keep the twenty-five hundred dollars ($2500) was a forfeiture within the meaning of the Maryland Declaration of Rights. Our view is entirely different. The constitutional proscription against forfeiture has nothing whatsoever to do with this case, as there was no forfeiture. As we see it, when Strickland paid the money over to Judge Woods, Strickland parted with all title to that money. While he testified that he never intended it to be a "gift" to the judge, he, nevertheless, freely and voluntarily relinquished both possession and title in and to the money. The possession and title then passed to Judge Woods, as agent for the State. Hence, the title was then vested in the State of Maryland. Title to the money having passed to the State through Judge Woods, Strickland had no interest in the money. If there was no interest, there was nothing to forfeit.

A basic principle of contract law is that agreements to commit a crime are illegal, void. Without question, courts will not order damages for breach of such a contract. Parties of that ilk are left where they are found, to stew in their own juice. *Certa v. Whittman,* 35 Md. App. 364, 370, 370 A. 2d 573, 577 (1977) ("The law will not aid a man who founds his cause of action upon his own illegal acts. The courts should leave such parties where they found them."); *Zalis v. Blumenthal,* 254 Md. 265, 267, 254 A. 2d 692 (1969); *Thorpe v. Carte,* 252 Md. 523, 529, 250 A. 2d 618 (1969); *Gotwalt v. Neal,* 25 Md. 434, 446 (1866); *Bayne v. Suit,* 1 Md. 80, 86 (1851); *Womack v. Maner,* 227 Ark. 786, 301 S.W.2d 438 (1957); 60 A.L.R.2d 1271; 17 C.J.S. §§ 223, 232, 272; Williston on Contracts, 3rd ed. § 1787. So that, even if it be postulated that Judge Woods breached a contract with Strickland, or that there was a complete failure of consideration between the parties,

Strickland would be devoid of legal means of recovering whatever money he paid for the sought performance of an illegal act. In *Clark v. United States,* 102 U. S. 322, 26 L. Ed. 181 (1880), the Court said that bribery "placed the claimants and the man they corrupted *in pari delicto.* They could not recover back from him the money they paid, neither can they from the United States after it has been taken from him as a punishment for his faithlessness to his trust." *Id.,* at 331-32; 26 L. Ed. at 184.

Generally, unless a statute expressly permits the return of the bribe money, courts have denied the briber the benefit of the money used in the commission of the crime. *See State v. Gunzelman,* 200 Kan. 12, 434 P. 2d 543 (1967); *Womack v. Maner, supra.* Strickland notes that the Attorney General, in 58 Op. 61 (1973), opined that "unless otherwise provided by law, and in the absence of a claim filed by some other person, property should be returned, as a general rule, to the person from whom it was taken." The Attorney General then observed that there were seven (7) exceptions to the general rule. 58 Op. at 62-68. Bribery is not identified as one of those exceptions. The list compiled by the Attorney General is based on statutory provisions. Strickland contends that because bribery is not one of those seven (7) exceptions, the legislative intent is that the bribe money be turned over to the culprit that paid the bribe. In so concluding, Strickland misreads the Attorney General's opinion. It did not say that there are only seven (7) exceptions. We note that the opinion was prefaced with "unless otherwise provided by law." Money paid in a bribe falls into that category.

Over and above statutes declaring that certain things shall not be returned to the party from whom they were seized or taken, 58 Op. at 62-68, is the public policy of the State. That policy makes it unthinkable that courts of justice will aid a briber in recovering the money with which he voluntarily parted in furtherance of his unlawful venture. *United States v. Galbreath,* 8 F. 2d 360 (N.D. Cal. 1925); *see Thorpe v. Carter, supra; Bayne v. Suit, supra.*

According to 60 A.L.R.2d 1271, Annot. *Bribe — Recovery by Briber,* § 2, "the modern rule, . . . supported by the weight

of authority [4] [is that] one cannot maintain an action to recover money paid or property transferred to another person for the purpose of bribing him," even if the person bribed expressly promised to repay it. *Malatkofski v. United States,* 179 F. 2d 905 (1st Cir. 1950).

The public expects that the courts will administer justice both fairly and impartially. Any attempt to bribe a member of the judiciary, or one of the satellites of the judiciary, is a reprehensible, odious act striking at the heart of the judicial system. *Gunzelman, supra.* For the bribe then to be repaid to the briber, on order of a court, erodes the public's confidence in the court's common sense and judgment. The law is firm that a murderer may not inherit from his victim. *Pannone v. McLaughlin,* 37 Md. App. 395, 377 A. 2d 597 (1977). It is equally as firm that a briber cannot recover the bribe.

We hold the law of Maryland to be that, absent a statute directing the return of monies used in a bribe, public policy forbids the return of the money to the briber whether his efforts be a success or failure.

It follows from what we have said that the order of the Circuit Court for Prince George's County is reversed.

> *Motion to dismiss denied.*
> *Order reversed.*
> *Costs to be paid by appellee.*
> *Mandate to issue forthwith.*

---

4. *See* cases cited in 60 A.L.R.2d 1271, § 2.