975 A.2d 909

**STATE of Maryland, et al.**

v.

**WBAL–TV.**

**Josie Brown, et al.**

v.

**WBAL–TV.**

**Nos. 1938 Sept.Term, 2007, 0014 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

July 17, 2009.

Michael R. Braudes (Nancy S. Forster, Public Defender, on brief) and Stephanie Lane-Weber (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD; Jani S. Tillery (Russell P. Butler, Maryland Crime Victims' Resource Center, Inc., on the brief), Upper Marlboro, MD, for Appellants.

Nathan Siegel (Adam J. Rappaport, Levine, Sullivan, Koch & Schulz, LLP, on the brief), Washington, DC, for Appellee.

Panel: BARBERA,* WOODWARD, JAMES A. KENNEY, III (retired, specially assigned), JJ.

JAMES A. KENNEY, III, Judge (retired, specially assigned).

These appeals require us to examine Maryland Rules 16–1001, *et seq.,* which became effective on October 1, 2004. The issues presented involve balancing the media's right to access and copy court records in a criminal trial against the interests of the criminal defendant, the State, and the family of the victim in limiting access to those records.

WBAL–TV ("WBAL"), appellee, filed a Motion to Intervene and for Access to Trial Exhibits (the "Motion for Access"), in the criminal case of John Gaumer, to access and copy portions of a DVD and an audio recording of Gaumer's two extensive and detailed confessions concerning the murder of Josie Brown. The State and Gaumer, appellants, opposed WBAL's motion. Appellants Teresa and Hugh Brown (the "Browns"), the parents of Josie Brown, filed a motion under Rule 16–1009 to seal or limit inspection of the record (the "Motion to Seal").

---

\* Mary Ellen Barbera, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

The State and Gaumer appeal the circuit court's October 23, 2007, Opinion and Order granting WBAL's motion to access and copy the DVD and the audiotape (the "Order").[1] The Browns appeal the court's denial of the Motion to Seal.[2] In this Court, WBAL has filed a motion to dismiss the State's and Gaumer's appeals, and has agreed to the further redaction of the DVD and audiotape.[3]

The appeals have been consolidated and we have condensed and reframed the questions presented as follows:

 I. Are the State and Gaumer entitled to appeal an order granting WBAL access to court records?

 II. Did the circuit court err by granting the Motion for Access and denying the Motion to Seal?

As we explain below, we shall: (1) deny the Motion to Dismiss; (2) affirm the circuit court's decision to grant the Motion for Access; and (3) affirm the court's denial of the Motion to Seal. We shall, however, remand to the circuit court with instructions to amend the respective orders to reflect a further redaction of the subject exhibits in accordance with WBAL's representations before this Court.[4]

---

1. The circuit court granted WBAL access to copy certain photographs depicting Gaumer with family members. Because appellants have not disputed WBAL's right to those photographs, we address only the DVD and audiotaped confessions in this Opinion.

2. The circuit court's March 5, 2008, order denied the Browns' Motion to Seal and granted WBAL permission to copy portions of the DVD and audiotape as requested in the Motion for Access. For this reason, we sometimes refer to both the October 23, 2007, order and the March 5, 2008, order as "the Order."

3. WBAL requests those portions of the DVD that correspond to page 2–20 (ending at "hitting her back"), 41–52 (ending at "everything like that"), 62–65, 90–94 (ending at "stronger than the average person"), 97–105 (ending at "did this to me"), and 107–118 of the transcript of Gaumer's confession. In addition, WBAL requests only those portions of the audiotape "played by the state's attorney during its closing arguments in the sentencing phase, which can be determined by the trial transcript."

4. This Opinion is not dependent upon the further redaction agreed to by WBAL on appeal.

## FACTUAL AND PROCEDURAL HISTORY

Gaumer was convicted of first-degree murder and first-degree rape of Josie Brown by a jury sitting in the Circuit Court for Baltimore County. We need not set out the details of the crime in this Opinion. It is sufficient to state that Gaumer's videotaped confession ("the DVD") and his separate audiotaped confession ("the audiotape") are disturbingly graphic, and that concerns raised, especially by the Browns, are understandable.

During Gaumer's trial, the State introduced the DVD and the audiotape into evidence. Several news reporters submitted informal requests to the court to copy the DVD, which the court denied without prejudice. On May 15, 2007, the day of Gaumer's sentencing, a WBAL reporter requested copies of certain trial exhibits. On May 16, 2007, WBAL, through counsel, submitted a letter to the court in support of its request to obtain copies of the exhibits. In addition, on May 17, 2007, a number of news organizations requested full copies of the DVD. In regard to these media requests, we refer to the statement of facts in the Opinion and Order:

> Pursuant to Maryland Rule § 4–322(a), this Court ordered that the DVD and the audiotaped confession be returned to the custody of the Baltimore County Police along with other exhibits. Noting that the exhibits had been returned to the custody of the Baltimore County Police, the Court denied [WBAL's] request [for copies of the exhibits] ... William Toohey, the Department's Director of Media Relations, provided a written response denying this request, stating that, "since Judge Norman denied the request of the media to have a copy of the DVD, their attorneys should appeal [that] decision, and we will await a final decision ... before releasing the DVD requested."

On May 23, 2007, WBAL filed the Motion for Access. Gaumer appealed his conviction on June 5, 2007 (the "Criminal Appeal"), and, on June 8, 2007, the State filed a response in opposition to the Motion for Access. Gaumer did not file a written response. Based on the Criminal Appeal, the court

record was transferred by the circuit court to this Court one week before the August 13, 2007, hearing on the motion.

The circuit court granted WBAL's Motion for Access and ordered that WBAL be provided with copies, or, at its expense, to have copies made of the requested trial exhibits with the exception of photographs depicting Gaumer in the company of people other than his family. The State immediately filed a motion to stay. The court granted a temporary motion to stay the court's order pending a further hearing. The State and Gaumer appealed the Order.

On November 8, 2007, the Browns filed the Motion to Seal. WBAL filed an opposition in response. Following a hearing on February 29, 2008, the circuit court, by its March 5, 2008, order denied the Browns' Motion to Seal and granted WBAL "permission to copy portions of the DVD and the audiotape, as requested in their Motion" as well as permission to "copy photographs of the [d]efendant, depicted alone or with family members only." It extended its earlier stay pending the outcome of an appeal. The Browns appealed this order.

Gaumer's criminal conviction was affirmed by this Court on December 22, 2008. His petition for *certiorari* was denied by the Court of Appeals on April 10, 2009.[5] We are not aware of any further proceedings challenging his conviction.

## DISCUSSION

### I. WBAL's Motion to Dismiss

WBAL contends that neither the State nor Gaumer is entitled to appeal the Order and has moved to dismiss their appeals (the "Motion to Dismiss"). WBAL argues that the circuit court's order adjudicated all of its interests in the case, but as to the State and Gaumer, it was neither a final judgment nor an appealable collateral order, and that even if

---

5. *Gaumer v. State*, No. 0829, Sept.Term 2007, 183 Md.App. 763 (Dec. 22, 2008), *cert. denied*, No. 623 Sept.Term 2008, 408 Md. 149, 968 A.2d 1065, 2009 Md. Lexis 167 (Md. Apr. 10, 2009).

it were an appealable order, the State would not have the right to appeal.

## A. Final, Appealable Order

### 1. Final Judgment

■ Maryland Code (1973, 2006 Repl. Vol.) § 12–301 Courts and Judicial Proceedings Article ("CJ") provides that "[t]he right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, [or] statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." To qualify as a final judgment, the judgment must be " 'so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding.' " *Quillens v. Moore,* 399 Md. 97, 115, 923 A.2d 15 (2007) (quoting *Cant v. Bartlett,* 292 Md. 611, 614, 440 A.2d 388 (1982)). The Court of Appeals has recognized three defining attributes of a final judgment:

> (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989).

■ Here, all of the defining attributes of a final judgment are present. The court clearly intended its ruling to be final and complete, with no qualifications. The interests of the State and Gaumer in the underlying criminal case, subject to Gaumer's appeal to this Court, were concluded by the rendering of a verdict and pronouncement of Gaumer's sentence.[6] There was, therefore, no reason to invoke Maryland Rule 2–602(b) because the Order adjudicated all of the claims pending

---

6. *See Lewis v. State,* 289 Md. 1, 4, 421 A.2d 974 (1980) ("In a criminal final judgment consists of a verdict and either the pronouncement of a sentence or the suspension of its imposition or execution.")

in the proceeding.[7] The docket entry of October 24, 2007, confirms that the clerk properly recorded the judgment in accordance with Md. Rule 2–601.[8] Even though a ruling governing access matters in a criminal case might not always be a final judgment as to the State and the criminal defendant, the Order was a final judgment in this case.

### 2. Collateral Order

Although we have held that the Order qualified as a final judgment in this case, we will address, alternatively, WBAL's argument that the Order was not an appealable collateral order. We do so because access issues are often likely to arise under circumstances where the underlying criminal case is not complete. As WBAL points out, "orders governing access matters do not adjudicate the only interests that the parties have in the case, and they rarely if ever complete the adjudication of all claims against all parties...."

■ To qualify as an appealable collateral order, the order must:

---

7. Md. Rule 2–602 states:
 (a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
 (1) is not a final judgment;
 (2) does not terminate the action as to any of the claims or any of the parties; and
 (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
 (b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
 (1) as to one or more but fewer than all of the claims or parties; or
 (2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

8. Md. Rule 2–601 provides that for a court to make proper record of a judgment, it must "mak[e] a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment."

(1) conclusively determine[ ] the disputed question, (2)resolve[ ] an important issue, (3) resolve[ ] an issue that is completely separate from the merits of the action, and (4) ... be effectively unreviewable if the appeal had to await the entry of a final judgment.

*Ehrlich v. Grove,* 396 Md. 550, 563, 914 A.2d 783 (2007) (quoting *Pittsburgh Corning Corp. v. James,* 353 Md. 657, 660–61, 728 A.2d 210 (1999)). A qualifying collateral order is immediately appealable. *See Hudson v. Hous. Auth.,* 402 Md. 18, 25–26, 935 A.2d 395 (2007).

█ Even if the Order did not qualify as a final order, it would qualify as an immediately appealable collateral order for both the State and Gaumer. By permitting WBAL to copy portions of the audiotape and the DVD, the court conclusively determined the disputed and important issue presented by the Motion for Access. That determination resolved an issue that was completely separate from the merits of the underlying criminal action, i.e., whether Gaumer was guilty of the crime charged and, if so, his punishment.

The Order was effectively unreviewable in an appeal from the final judgment in Gaumer's criminal case. *See Mann v. State's Attorney for Montgomery County,* 298 Md. 160, 164– 65, 468 A.2d 124 (1983) (holding that an order granting the media the right to interview a defendant in a capital murder case was unreviewable upon appeal in the criminal trial, and therefore immediately appealable as a collateral order, because the review on appeal would have been too late to cure any damage to the defendant from what was said in the interview). As WBAL notes, "since the [the Order] was entered after [Gaumer] noted an appeal of his conviction, [Gaumer] may not be able to contest the Order through that appeal or claim that the trial court's decision infected the conviction in some way." We agree that the grant of the Motion for Access could not have been considered an error in the criminal case because the criminal trial had been concluded before the Order was issued. In fact, WBAL did not make its formal request until the day of Gaumer's sentencing.

When the Order granting the Motion for Access was issued, the appeal in the criminal case had been filed and the time for appeal had passed.

## B. The State's Right to Appeal

WBAL argues that the State may not appeal the Order because its right to appeal in a criminal proceeding is limited by CJ § 12–302(c).[9] The Court of Appeals has stated, "[t]he State's right to appeal in criminal cases [is] based entirely on statute[, and,] [u]nless the issue presented may be properly categorized as one of the actions enumerated in [CJ § 12–302(c)], the State has no power to seek appellate review." *State v. Manck*, 385 Md. 581, 597–98, 870 A.2d 196 (2005).

▉ The State, however, has the same right under CJ § 12–301 as other parties to appeal in a civil proceeding. *See, e.g., State v. Hicks*, 139 Md.App. 1, 6, 773 A.2d 1056 (2001) ("Because a petition for a writ of *coram nobis* is a civil proceeding, the State is not limited to the circumstances described in CJ § 12–302(c)."). Moreover, "[s]imply because a motion is filed in a court that exercises criminal jurisdiction" does not mean "that the proceeding arising from the motion must, *ipso facto*, be criminal in nature[.]" *State v. Strickland*,

---

9. CJ § 12–302(c) provides that in a criminal case, the State may appeal for the following reasons:

(1) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.

(2) The State may appeal from a final judgment if the State alleges that the trial judge:

(i) Failed to impose the sentence specifically mandated by the Code; or

(ii) Imposed or modified a sentence in violation of the Maryland Rules.

(3) (i) In a case involving a crime of violence as defined in § 14–101 of the Criminal Law Article, and in cases under §§ 5–602 through 5–609 and §§ 5–612 through 5–614 of the Criminal Law Article, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights.

42 Md.App. 357, 359, 400 A.2d 451 (1979). In *Strickland,* the State was permitted to appeal a circuit court's grant of a motion for the a return of seized money because the motion was "more akin to a replevin, a civil action, than criminal proceeding." *Id.* We stated, *id.* at 360, 400 A.2d 451:

We think Strickland's petition, even though filed in the criminal case, was a request that the court determine title to personal property. As such, regardless of what Strickland chooses to call it, that aspect of the case is civil, not criminal, and it matters not one whit that the money was introduced as evidence in a trial for violation of a criminal statute.

We hold that the proceeding in the circuit court to recover money that was introduced into evidence, in a bribery trial, was civil in nature, and that the State has the right to appeal an order of court directing that the money be paid over to the briber.

We are also guided in this analysis by the Court of Appeals' explanation in *News American Division, Hearst Corp. v. State,* 294 Md. 30, 40, 447 A.2d 1264 (1982), that there are at least three separate judicial avenues available to the press to oppose an order issued in a criminal case that it believes infringes upon its First Amendment rights:

1. By an application to an appellate court for review, by extraordinary writ, of the action of the order-entering court;

2. By appearing before the order-entering court in the case in which the order is entered, with further review on direct appeal by the press from an adverse determination in that forum; and

3. By applying to another trial court, or to the order-entering court in a separate civil action, for an injunction or declaratory judgment, with further review by direct appeal.

The *Hearst* Court stated that intervention in the criminal case was more appropriate than pursuing the issue in another court. *Id.* at 41, 447 A.2d 1264. In that case, a newspaper was granted leave to intervene in a criminal case and to be heard in opposition to the defense counsel's request for an

order to prohibit prosecutors from discussing the case with the media. *Id.* Hearst appealed the circuit court's decision to order those involved in the case to refrain from making extra-judicial statements. The defendant cross-appealed the court's order to allow Hearst to intervene. *Id.*

This Court held that Hearst was not permitted to intervene in a criminal case, but the Court of Appeals granted *certiorari* and affirmed the intervention. *Id.* The Court of Appeals explained that a "quest for an order in a separate case" would have been "highly inappropriate" because it would be " 'an incongruous and dangerous situation [if] one Circuit Court judge of this State could paralyze the entire administration of justice in the law courts thereof, both civil and criminal, byway of injunction.' " *Id.* at 41–42, 447 A.2d 1264 (quoting *Kardy v. Shook,* 237 Md. 524, 533, 207 A.2d 83 (1965)). In concluding that intervention was appropriate, the Court stated:

> A procedure under which the press appears by motion in the criminal case when an order restricting pretrial publicity is requested, or has been entered, has the advantage of initially presenting the issues to the trial judge for his consideration in the circumstances of the particular case. The trial judge is in a better position than an appellate court to evaluate matters which may be rapidly unfolding before him and in the community in which the criminal case is pending. The trial judge is also the one who must initially consider how effective alternative methods of protecting the fair trial right of the accused might be under the circumstances. Allowing the press to appear by motion in the criminal case also furnishes the trial court with the benefit of argument by an advocate of First Amendment interests. Typically the request for a restrictive order will be made by the defense and there is little incentive on the part of the State to oppose it.

*Id.* at 44–45, 447 A.2d 1264.

WBAL does not rest its position in this case on the First

Amendment.[10] It states, instead, that "[w]hile the 'special and compelling reason' standard established by the Rules has parallels to the test applied to First Amendment access questions, the source of the standard is the Maryland Rules, not the First Amendment." Notwithstanding the basis for WBAL's claim, the issues presented are sufficiently similar to a First Amendment claim to apply the *Hearst* Court's analysis.

◼ Although the Motion for Access was made post-trial, we are persuaded that intervention in the criminal trial was a viable and appropriate judicial avenue to gain access to the court records that are presumed "open to the public for inspection and copying and for which access has been denied." Rule 16–1002(a); Rule 16–1003. By intervention, the issues would be presented "to the trial judge for his consideration in the circumstances of the particular case . . . with the benefit of argument by an advocate of [the intervener's] interests." *Hearst*, 294 Md. at 42, 447 A.2d 1264. Certainly the trial judge was in the best position to evaluate the request and balance any competing interests.

Although the Motion for Access was filed in the criminal proceeding, the relief sought was civil in nature and could have been sought in "a separate civil action." *Id.* at 30, 447 A.2d 1264. Therefore, we hold that the State's right to appeal in this case was not limited by CJ § 12–302(c). The Motion to Dismiss is denied.

## II. Order Granting the Motion for Access

### A. Circuit Court's Jurisdiction

After WBAL filed the Motion for Access in the circuit court, the case record was transferred to this Court pursuant to the

---

**10.** The Browns asked: "Whether the media has a constitutional right to obtain a copy of defendants [sic] DVD and audiotape confession?" Similarly, the State argues that "[n]either the common law right of access to court records nor the First Amendment should deter courts from protecting against the oppressive use of judicial records. The right to privacy stands on equal footing with First Amendment rights and may compel a denial of access to court records."

Criminal Appeal. The State and Gaumer argue that, under Rule 16–1011, transfer of the record to this Court one week prior to the hearing divested the circuit court of jurisdiction to consider the motion.

Rule 16–1011(a)(1)–(2) provides:

(a) If, upon a request for inspection of a court record, a custodian is in doubt whether the record is subject to inspection under the Rules in this Chapter, the custodian, after making a reasonable effort to notify the person seeking inspection and each person to whom the court record pertains, shall apply in writing for a preliminary judicial determination whether the court record is subject to inspection.

(1) If the record is in an appellate court or an orphan's court, the application shall be to the chief judge of the court.

(2) If the record is in a circuit court, the application shall be made to the county administrative judge.

In regard to statutory interpretation, the Court of Appeals in *Barbre v. Pope*, 402 Md. 157, 172–73, 935 A.2d 699 (2007), explained:

We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose.

(Citations omitted.)

We have stated that "[t]he same fundamental principles of statutory construction apply to the interpretation of a rule[,]" *Hoang v. Hewitt Avenue Associates, LLC*, 177 Md.App. 562,

588, 936 A.2d 915 (2007), and that the "cardinal rule of statutory construction is to ascertain and effectuate legislative intention." *Chesapeake Bank of Maryland v. Monro Muffler/Brake, Inc.,* 166 Md.App. 695, 723, 891 A.2d 384 (2006), *cert. denied,* 392 Md. 726, 898 A.2d 1005 (2006).

Rule 16–1011(a) states that, "[i]f . . . a *custodian* is in doubt whether the record is subject to inspection under the Rules in this Chapter, the *custodian* . . . shall apply in writing for a preliminary judicial determination whether the court record is subject to inspection." (Emphasis added.) For the purposes of the Rule, the "custodian" is "the clerk of a court[ ] and any other authorized individual who has physical custody and control of a court record." Rule 16–1001(f). According to its plain language, Rule 16–1011(a) applies to requests for inspection of a court record made to a clerk or physical holder of the record, and, if a custodian is in doubt as to whether the court record is subject to inspection, the custodian may apply for a "preliminary judicial determination." The Rule does not apply to proceedings filed to compel access, and the transfer of the case record to this Court in the Criminal Appeal did not divest the circuit court of jurisdiction to decide the pending Motion for Access.

 The Court of Appeals has made clear that a circuit court retains fundamental jurisdiction in cases where an appeal is pending so long as the exercise of that jurisdiction does not "preclude[ ] or hamper[ ] the appellate court from acting on the matter before it," and "[a]ny post-judgment ruling by a circuit court that [precludes or hampers judicial review] may be subject to reversal on appeal, but it is not void *ab initio* for lack of jurisdiction to enter it." *Jackson v. State,* 358 Md. 612, 620, 751 A.2d 473 (2000). Therefore " 'when an appeal is taken, the trial court may continue to act with reference to matters not relating to the subject matter of, or matters not affecting, the appellate proceeding[.]' " *Cottman v. State,* 395 Md. 729, 741, 912 A.2d 620 (2006) (quoting *State v. Peterson,* 315 Md. 73, 80, 553 A.2d 672 (1989)). In other words, "[i]f the trial court does . . . decide to proceed during the pendency of

the appeal, absent a stay required by law, or one obtained from an appellate court, it has the authority to exercise the 'fundamental jurisdiction' which it possesses." *Peterson,* 315 Md. at 81, 553 A.2d 672 (quoting *Pulley v. State,* 287 Md. 406, 419, 412 A.2d 1244 (1980)).

The State and Gaumer argue that, even if the circuit court retained jurisdiction over the Motion for Access, it should have refrained from exercising jurisdiction while Gaumer's criminal appeal was pending. According to the State, dissemination of the exhibits could "hamper" this Court's consideration of the issues in Gaumer's criminal appeal by affecting a potential jury if a new trial should be granted.[11] We are not persuaded.

In its post-trial Order, the court "did not re-decide the merits of the case or rule upon any of the issues pending" before this Court on appeal. *Cottman,* 395 Md. at 741, 912 A.2d 620. As we discuss below, the impact of media dissemination of the DVD and the audiotape on a potential jury pool can be an appropriate factor to consider in deciding whether to deny or grant a motion for access, but it does not affect the court's fundamental jurisdiction to consider the issue.

We hold that the circuit court had jurisdiction to consider WBAL's motion, and was not bound to refrain from exercising that jurisdiction.

## B. Abuse of Discretion

We will only disturb a circuit court's discretionary decisions when it has abused its discretion. In explaining the abuse of discretion standard, the Court of Appeals in *King v. State,* 407 Md. 682, 697, 967 A.2d 790 (2009), recently cited this Court's analysis in *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025(1994):

"Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different

---

11. In this case, the stay of the Order would mitigate that concern.

ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

There is a certain commonality in all these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective. That, we think, is included within the notion of "untenable grounds," "violative of fact and logic," and "against the logic and effect of facts and inferences before the court."

(Alterations in original) (Internal citations omitted).

The State, the Browns, and Gaumer argue that the court abused its discretion in granting the Motion for Access and in denying the Motion to Seal. More particularly, the State and the Browns contend that, in the context of this case, the protection of the victims' rights outweighs the rights of the public to access court records. Gaumer contends that the Order violated his fair trial rights. All appellants contend that transcripts of the DVD and the audiotape, which had been released in full, were sufficient to satisfy the Access to Court Records Rules. We address each contention in turn.

## 1. Victims' Rights

The State and the Browns contend that the court abused its discretion by not recognizing that the Browns' rights under Article 47 of the Maryland Declaration of Rights outweighed the media's right to access and copy the court records. Article 47(a) provides, in pertinent part, that "[a] victim of crime shall be treated by agents of the state with dignity, respect, and sensitivity during all phases of the criminal justice process." More specifically, a victim has to be informed of the "criminal justice proceeding" and "upon request and if practicable, to be notified of, to attend, and to be heard" at such a proceeding as such rights "are implemented and the terms 'crime[,]' 'criminal justice proceeding[,]' and 'victim' are all specified by law." Article 47(b).

The circuit court, in making its determination to grant the Motion for Access, stated:

> The Court is mindful that people do not willingly choose to become victims of violent crimes and that, if the victim's family were subjected to such broadcasts, they would be reminded of the tragedy that the Defendant has visited upon them. However, if either the DVD or audiotape are broadcast, now or in the future, the victim's family can choose not to receive those broadcasts. The audiotape and those portions of the DVD sought by the media do not identify the victim's family members, so their identities would not be compromised by releasing the DVD and audiotape for copying.

> Against the understandable concerns for the victim's family, the Court must also weigh the significant public interest in fully disclosing what transpired in court. The public has a legitimate interest to ensure that its judicial and criminal justice systems are fair and effective. One of the best ways to ensure public confidence in its judicial system is to permit public access to its operations. The Petitioner seeks copies of certain portions of the DVD and audiotape to broadcast to the public. Any member of the public who attended the

trial would have seen and heard, in their complete form, the DVD and audiotape when they were played to the jury. ... Given what the victim's family has had to endure because of the Defendant's crime, concerns that a media broadcast of the DVD and/or the audiotape might have a greater negative impact on them is speculative at best. Considering the facts of the pending matter, public interest in the full disclosure of judicial proceedings, and Maryland Rule § 16–1000[sic] *et seq.*, the Court finds that there is no "compelling need" to prohibit the media from obtaining copies of the DVD and audiotape.

The Browns argue that airing the recordings of the "graphic details of [the] murder" would cause "extreme damage[,]" "extreme distress[,]" and "substantial and irreparable harm" to them and especially to Josie Brown's daughter, now age 11, who has so far "been shielded" from the "horrific facts" of the murder.

The State argues that "the victim's family's interests in lessening harmful and painful publicity should be a significant factor in assessing whether copies of criminal exhibits should be handed out after the trial[,]" and, "because the trial court gave short shrift to the family's right to privacy, it abused its discretion." It states that "the trial court improperly dismissed the concerns for invasion of the family's privacy that would accompany the publication of [ ] Gaumer's murder confessions, suggesting that the family could simply ignore any broadcast." It also argues that there was nothing "speculative" about the "greater negative impact" that airing the recordings would have on the Browns in comparison to what they have already endured.

 Maryland courts have not previously addressed the interplay between Article 47 and a court's discretion to limit or seal a case record, but, in *State v. Broberg*, 342 Md. 544, 565–66, 677 A.2d 602 (1996), the Court of Appeals ruled that Article 47 does not "preclude [a] trial judge from exercising discretion regarding the admission of photographic evidence." Similarly, we hold that Article 47 did not preclude the trial

judge from exercising discretion regarding access to and the copying of exhibits at issue in this case. We explain.

In *Cianos v. State*, 338 Md. 406, 413, 659 A.2d 291 (1995), the Court of Appeals stated that "trial judges *must* give appropriate consideration to the impact of crime upon the victims." (Emphasis in original.) The Court also stated that "Article 47 'represents the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard.'" *Hoile v. State*, 404 Md. 591, 605, 948 A.2d 30 (2008) (quoting *Lopez–Sanchez v. State*, 388 Md. 214, 229, 879 A.2d 695 (2005)). Additionally, the General Assembly has demonstrated a sound commitment to the rights of victims in criminal cases with legislation speaking to the rights of victims in numerous statutes.[12]

Rules 16–1001, *et seq.*, clearly reflect the common law presumption of the openness of court records that, as a general rule, can only be overcome by a "special and compelling reason[.]" Rule 16–1009(d)(4)(A); *See Baltimore Sun Co. v. Mayor & City Council of Baltimore*, 359 Md. 653, 660–61, 755 A.2d 1130 (2000); *Group W Television v. State*, 96 Md. App. 712, 716, 626 A.2d 1032 (1993); *Baltimore Sun v. Thanos*, 92 Md.App. 227, 229, 607 A.2d 565 (1992).

The DVD and the audiotape "are presumed to be open to the public for inspection." Rule 16–1002(a).[13] Because

---

**12.** *See, e.g.*, Maryland Code Annotated (1999), §§ 7–803–7–805 of the Correctional Services Article (providing notice to victims of parole release agreements, violations, and commutation, pardon, or remission of sentence); Maryland Code Annotated (2001), § 6–106 of the Criminal Procedure Article ("CP") (providing the victim the right to notice of a hearing for a motion for a new trial and the right to attend such a hearing); CP § 11–102 (providing the victim the right, if practicable, to attend any proceeding where the defendant has a right to appear).

**13.** Rule 16–1001(e)(3) includes within the definition of a "court record" a "record that is a case record[.]" A "case record," in turn, is "a document, information, or other thing that is collected, received; or maintained by a court in connection with one or more specific judicial actions or proceedings[.]" Rule 16–1001(c)(1)(A). The DVD and the

WBAL seeks access to court records that, by Rule, are normally subject to inspection, its request for access need not be supported by a "special and compelling reason." Instead, under Rule 16–1009(d)(4), it is appellants who must demonstrate a "special and compelling reason" as to why the court should deny or limit inspection of the exhibits sought by WBAL.

Prior to the adoption of the Rules, we held that the court could seal all or part of the record when compelling interests to maintain the confidentiality of the record outweighed the right of access to it. *Thanos*, 92 Md.App. at 246–47, 607 A.2d 565. We explained the balancing process required to seal a court record as follows:

> In engaging in this difficult balancing process, the trial court will obviously find some interests of more importance in some cases than others, depending on the nature of the crime, defendant, victim, and report itself. If, upon completion of this process, the court concludes that one or more compelling interests served by maintaining the confidentiality of all or part of the report outweigh the First Amendment right of access to it, then the court may seal all or part of the report.

> Finally, in making its determination, "[t]he court should consider alternatives to a broad seal, including the option of redacting portions of pleadings or transcripts."

*Id.* at 247, 607 A.2d 565 (quoting *Baltimore Sun Co. v. Colbert*, 323 Md. 290, 306, 593 A.2d 224 (1991)).

Under the Rules, a court record that is presumed to be open for inspection and copying may be sealed only for special and compelling reasons. The Rules favor access, but they do not deny discretion to the trial judge to seal or to limit access. In the exercise of that discretion, the nature of the balancing process remains essentially the same. Accordingly, even if we were to assume that all of the asserted rights or interests are

audiotape are case records and, therefore, court records that "are presumed to be open to the public for inspection." Rule 16–1002(a).

of equal importance at the beginning of the balancing process, the particular circumstances of each case, including the crime, the defendant, the victim, and the posture of the case, will cause some interests to rise and others to fall in importance during the process.

Contrary to the State's assertion, the court did not improperly dismiss the Browns' privacy concerns. The court clearly recognized those concerns in the difficult process of balancing their interests against the public's right of access to court records. The court considered the Browns' argument that they will be "irreparably harmed" by the airing of the "horrific facts" of Josie Brown's murder, but found the argument "speculative" in light of the fact that WBAL did not seek those portions of the confession that contain the "horrific facts" of the murder and that extensive coverage of the murder trial had already occurred. In the court's view, because full transcripts of both the DVD and the audiotape were already released, the airing of redacted versions of the DVD and the audiotape sought by WBAL could hardly have much more of a negative impact on the Browns then what they had already endured.

 Article 47 requires due consideration of the impact of crimes upon the victims in "all phases of the criminal justice process." It does not, however, provide victims with an absolute right to veto a request to access and copy court records. The issue remains one of balancing competing interests.

In light of the circumstances and the applicable rules and principles involved, we cannot say that the decision in this case was unreasonable or so far removed from any imaginable center mark that it was untenable. Nor can we say that, in its balancing of the competing interests, the court did not treat the Browns with "dignity, respect, and sensitivity."

WBAL addresses the merits of the Browns' arguments, but asserts an "alternative basis" for affirming the circuit court. It questions the Browns' standing to file the Motion to Seal and challenges the filing of the Motion to Seal as a collateral

attack on the Order. Our review of the record indicates that the circuit court, in denying the Motion to Seal, did not consider the standing, collateral attack, or res judicata arguments raised by WBAL.

The Browns filed the Motion to Seal on behalf of their daughter, as the "victim's representative," and "individually," on behalf of themselves, and as "grandparents and next best friend" of their granddaughter. Rule 16–1009(a)(1)(A) permits "a party to an action in which a case record is filed, including a person who has been permitted to intervene as a party, and a person who is the subject of or is specifically identified in a case record" to file a motion "to seal or otherwise limit inspection of a case record filed in that action."

According to WBAL, the Browns' standing to file the Motion to Seal is "somewhat unclear." They are not parties to the criminal trial and they and their granddaughter are not "identified or referred to in the records at issue."

The Browns contend that the victim, Josie Brown, was identified in the records at issue and that they have standing as the "victim's representative[s]." In addition, they assert that, as family members of the victim, they are also victims of the crime, and they are entitled to rights under Article 47. Both parties recognize the Browns as victims and as the "victim's representative[s]" in this case.

The term "victim's representative" is a statutory designation that provides certain specified rights. Victims and deceased victims' representatives are provided with the right to notification, the right to be present at certain proceedings, and, in some circumstances, the right to be heard in the criminal trial, in addition to the right to apply for leave to appeal the denial of specified rights. *See, e.g.,* CP § 11–103, § 11–302, §§ 11–402–11–403. The right to notice may extend to "subsequent proceedings" defined in CP § 11–503(a), and may include "any other postsentencing court proceeding." These rights, which serve to implement Article 47, do not, however, make a victim or the victim's representative a party to the criminal action. *See Cianos v. State,* 338 Md. 406, 410–

11, 659 A.2d 291(1995); *Lopez–Sanchez v. State*, 388 Md. 214, 224, 879 A.2d 695 (2005). Neither the Rules nor the statutory pro visions cited only generally by the Browns as CP Title 11 create automatic standing for the purpose of participating in an access dispute.

 In our view, intervention would have been appropriate under the Rules to protect the privacy interests of the Brown family in this case, and WBAL concedes that the Browns would have succeeded on a motion to intervene. We agree that the Browns would have had sufficient interest to justify intervention for the purposes of either filing a motion to seal or limit access or to oppose WBAL's Motion for Access.[14] Nevertheless, it is not necessary to decide the standing issue to reach the merits in this case.

We have held that the State was entitled to appeal the grant of the Motion for Access and, in its brief, the State addresses the Browns' concerns. Therefore, there is one party on each side of the access dispute with standing, making it unnecessary to address the standing issue in order to decide the case on the merits. *See, e.g., Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 949 A.2d 639 (2008); *Sugarloaf Citizens Assn. v. Ne. Maryland Waste Disposal Auth.*, 323 Md. 641, 594 A.2d 1115 (1991).

In addition, WBAL has stated in its brief that it acknowledged in the trial court that it "would not object to the Browns filing a brief *amicus curiae* in this appeal[.]" Were we to dismiss their appeal on the basis of lack of standing to file the Motion to Seal or were we to treat the Motion to Seal as a collateral attack on the Order, we would, under the circum-

---

14. It appears that the Browns were aware of the Motion for Access, but, perhaps relying on the State, did not intervene at that time. It is questionable whether intervention would be permitted after appeal of the grant of the Motion for Access, and, therefore, there may be merit to WBAL's collateral attack argument. On the other hand, WBAL seems to recognize that the "particular circumstances here might pose a closer question than other examples of collateral attacks on court orders." Because the issue was not fully developed below or within the briefs, we will not decide the case on this alternative basis.

stances, permit the Browns to participate in this appeal as *amicus curiae*. Rule 8–511.

## 2. Fair Trial

Gaumer argues that the court abused its discretion by granting the Motion for Access in violation of his right to receive a fair trial. To support his contention, he cites a number of cases where trial courts refused to allow the media to have access to court records, including *Group W.*, 96 Md.App. at 712, 626 A.2d 1032; *United States v. Beckham v. Post–Newsweek Stations*, 789 F.2d 401 (6th Cir.1986); *Belo Broad. Corp. v. Clark*, 654 F.2d 423 (5th Cir.1981); *United States v. Edwards*, 672 F.2d 1289 (7th Cir.1982); and *United States v. Webbe*, 791 F.2d 103 (8th Cir.1986). The State adds that "the trial court erroneously ruled that a defendant's 'right to a fair trial is not a factor to weigh' in the analysis."

In each of the cited cases, the media sought and were denied copies of audio and/or videotapes in a criminal trial. As Gaumer noted, in each case, "future proceedings were anticipated because the individual was facing separate but related untried charges, a jury had failed to reach a unanimous verdict, or because other individuals faced future trials arising from the same event." According to Gaumer, in those cases the court held that "either the defendant's or the other potential defendant's Sixth Amendment fair trial rights outweighed the interest in copying and disseminating at least a portion of the disputed evidence, or that a trial judge did not abuse discretion in so concluding."

An essential factor distinguishing this case from those cited by Gaumer is that his criminal trial had concluded when WBAL filed its Motion for Access. In the cases cited, either the jury was still sitting in the criminal trial or another defendant's trial was pending at the time the media sought the evidence.

According to Gaumer, "future proceedings" could occur in his case, and "[r]elease of highly dramatic audio and video depictions of experienced detectives' interrogations of a col-

lege student with no experience with the criminal justice system carries a real potential for tainting a future jury pool." Even if the Criminal Appeal were pending, we would not find this argument particularly persuasive.[15] Instead, we find instructive the view of the United States Court of Appeals for the District of Columbia, as articulated in *In re NBC*, 209 U.S.App.D.C. 354, 653 F.2d 609, 614 (D.C.Cir.1981).

In *NBC*, the court addressed the risk of post-trial access to court records causing prejudice in the event of a retrial. In that case, the trial court based its denial of a broadcaster's application for access to court records on the defendants' interest in securing a fair and impartial jury should the case be retried. In its analysis of the issue, the court stated, *id.* at 615:

> Protecting the rights of [the defendants] in the event of new trials is a perfectly valid consideration, but our decision in [*United States v. Mitchell*, 551 F.2d 1252 (D.C.Cir.1976), *rev'd on other grounds, Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)] makes it clear that restricting the common law right to inspect and copy judicial records is rarely the proper protection.

In discussing their decision in *Mitchell*, the *NBC* court stated:

> [T]he trial court abused its discretion in refusing to release the tapes [in evidence] merely to avoid the risk of causing possible prejudice at a "hypothetical" second trial. [We] doubted whether the risk of potential prejudice at a hypothetical second trial could ever justify infringing upon the common law right of access to judicial records. [We] noted that this argument, taken to its logical conclusion, could result in the tapes never being released since any conviction

---

15. Gaumer, as noted, lost his direct criminal appeal, but we do not consider the fair trial issue presented to be moot, as he might continue to challenge his conviction through other avenues. Moreover, even if the fair trial issue were moot, we believe that the issue presented is an "important issue[ ] of public interest ... which merit[s] an expression of our views for the guidance of courts and litigants in the future." *Cottman*, 395 Md. at 745, 912 A.2d 620 (citations omitted).

is always subject to the possibility of successful collateral attack. More importantly, however, [we] found that the risk of prejudice was not sufficiently grave in that case to justify the district court's action.

*Id.* (internal footnotes omitted).

Here, the court considered Gaumer's right to receive a fair trial in its analysis but concluded that, based on the post-trial posture of the proceedings, it was no longer a factor to be weighed in deciding whether WBAL was to receive the copies it requested. A concern for Gaumer's fair trial rights in a speculative future trial can be a valid consideration, but it is a concern that pales in the light of the public's interest in access to court records and a consideration that would rarely over-come the right to access and copy court records.[16] Therefore, it was not unreasonable, in this case, for the circuit court to conclude:

> The Defendant has already been tried, convicted and sen-tenced and, although the matter is currently pending on appeal, he was afforded and received his right to a fair trial. Since the Defendant's trial has been concluded, the court's concerns for the Defendant's right to a fair trial is not a factor to weigh in deciding whether to allow the Petitioner to received the copies of the evidence they requested.

### 3. Sufficiency of Transcripts

The State, Gaumer, and the Browns argue that, if the court is required to allow the media access to the records at issue, copies of the full transcripts of the DVD and the audiotape, already received by WBAL, are sufficient, and compliance with the Access to Court Records Rules does not demand actual copying of the DVD and the audiotape.

---

**16.** In the event of a future retrial, a court can consider any steps which may be necessary to protect Gaumer's fair trial rights as a result of the release of copies of the DVD and the audiotape. *See, e.g., Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 563–65, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *In re Application of Nat'l Broad. Co.,* 635 F.2d 945, 953 (1980).

As noted, Rule 16–1001(c) defines a case record, in part, as "a document, information, or other thing that is collected, received, or maintained by a court in connection with one or more specific judicial actions or proceedings." Rule 16–1006(f) specifically refers to "audio, video, and digital recording[s]" as case records, and, as case records, the DVD and the audiotape are court records that are open to the public for inspection, unless the court expressly orders otherwise. Rule 16–1001(e); Rule 16–1002. A person entitled to inspect a court record is entitled to have a copy or printout of the court record, which may be in paper form or, subject to certain conditions, in electronic form. Rule 16–1003.

The State argues that "providing the trial exhibits in the form of printed transcripts adequately serves the interest in providing access to judicial proceedings, and satisfies the rules governing access to and inspection of court records." Gaumer argues that, because WBAL has received a transcript of the videotaped confession, "any obligation to provide 'copies' " has been satisfied. The Browns argue that "WBAL has received a copy of the transcripts and had the opportunity to observe the confession played at trial and report on the events of the proceedings. WBAL has all the information it needs...."

As appellate courts frequently comment when referring to a "cold record," a transcript ordinarily reflects only the words spoken, and not how they were said or the physical actions and reactions of the participants present. The circuit court explained:

> One of the best ways to ensure public confidence in its judicial system is to permit public access to its operation. [WBAL] seeks copies of certain portions of the DVD and audiotape to broadcast to the public. Any member of the public who attended the trial would have seen and heard, in their complete form, the DVD and audiotape when they were played to the jury.

In short, a transcript of the DVD and audiotape is not a copy.

In *Group W.*, we stated that "[u]ltimately, the decision to permit copying of exhibits is best left to the sound discretion

of the trial court, and the trial court is to exercise its discretion in light of the relevant facts and circumstances of the particular case." 96 Md.App. at 720, 626 A.2d 1032 (citing *Nixon*, 435 U.S. at 589, 98 S.Ct. 1306). Here, the circuit court, under Rule 16–1009, had the discretion to determine what level of copying was appropriate. In exercising that discretion, the court considered the fact that the media had already received the full transcripts of the DVD and the audiotape. In balancing the public's right to access court records with Gaumer's fair trial concerns and the Browns' privacy and victims' rights concerns, the court's decision to permit copies of the redacted DVD and audiotape, in addition to the transcripts, was not an abuse of discretion.

## *CONCLUSION*

In conclusion, we deny WBAL's Motion to Dismiss the State's and Gaumer's appeals. We hold that the circuit court had jurisdiction to consider the Motion for Access and that it did not abuse its discretion by granting the Motion for Access or by denying the Motion to Seal. We shall, however, remand the case to the circuit court for further redaction of the DVD and audiotape as agreed to by WBAL in this Court.

**JUDGMENT AFFIRMED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS 1/4 TO APPELLANTS; 3/4 TO APPELLEES.**